**FILED**
CLERK, U.S. DISTRICT COURT
1/17/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VAV___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>JAMES ARTHUR MCDONALD, JR.,<br><br>           Defendant. | CR 2:23-cr-00019-DSF<br><br>I N D I C T M E N T<br><br>[15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5: Securities Fraud; 18 U.S.C. § 1343: Wire Fraud; 15 U.S.C. § 80b-6, 80b-17: Investment Adviser Fraud; 18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. §§ 981(a)(1)(C), 982, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

### COUNT ONE

[15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5]

A.  INTRODUCTORY ALLEGATIONS

   1.  At times relevant to this Indictment:

       a.  Defendant JAMES ARTHUR MCDONALD, JR., was a resident of Arcadia, California.

       b.  Defendant MCDONALD was the Chief Executive Officer ("CEO") and Chief Investment Officer ("CIO") of Hercules Investments

1  LLC ("Hercules"), a California limited liability company
2  headquartered in Los Angeles.  From on or about September 5, 2019, to
3  on or about December 31, 2021, Hercules was registered with the
4  United States Securities and Exchange Commission ("SEC") as an
5  investment adviser under the Investment Advisers Act of 1940, and
6  defendant MCDONALD served as the investment adviser representative
7  for Hercules.
8         c.   Defendant MCDONALD was the CEO and CIO of Index
9  Strategy Advisors Inc. ("ISA"), a Texas corporation headquartered in
10 Los Angeles, California.  From on or about November 22, 2010, to on
11 or about May 1, 2019, ISA was registered in at least one state as an
12 investment adviser under the Investment Advisers Act of 1940, and
13 defendant MCDONALD served as the investment adviser representative
14 for ISA.
15             i.   On or about December 11, 2014, defendant MCDONALD
16 filed on behalf of ISA a notice of withdrawal from registration as an
17 investment adviser in all states in which ISA was registered except
18 Texas.
19             ii.  On or about May 1, 2019, defendant MCDONALD filed
20 on behalf of ISA a notice of withdrawal from registration as an
21 investment adviser in Texas, at which point ISA was no longer a
22 registered investment adviser in any jurisdiction.  In the withdrawal
23 notice form, defendant MCDONALD represented, under penalty of
24 perjury, that ISA had ceased conducting advisory business in the
25 jurisdiction from which it was withdrawing as of August 1, 2018.  In
26 the "Reasons for withdrawal" section of the form, defendant MCDONALD
27 crossed out "[c]ontinuing advisory activities, but relying on an
28 exemption from registration," and wrote, "No longer in business or

2

closing business." Defendant MCDONALD also represented on the form that neither he, nor any related person, had custody of client assets.

   d. Bank of America, N.A., was a financial institution within the meaning of 18 U.S.C. § 1956(c)(6) whose accounts were then insured by the Federal Deposit Insurance Corporation.

    i. Defendant MCDONALD maintained a checking account at Bank of America ending -5386 in the name "Hercules Investments LLC" for which he was the sole signatory (the "Hercules BoA Account").

    ii. Defendant MCDONALD maintained a checking account at Bank of America ending -0758 in the name "Index Strategy Advisors Inc" for which he was the sole signatory (the "ISA BoA Account").

   e. Defendant MCDONALD was, with respect to ISA's clients, an investment adviser within the meaning of 15 U.S.C. § 80b-2(a)(11).

   f. Defendant MCDONALD rented a home in Arcadia, California, from landlord Y.C.

B. THE SCHEME TO DEFRAUD

  2. Beginning no later than in or about January 2021, and continuing through on or about January 17, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant MCDONALD, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of Hercules securities, used and employed manipulative and deceptive devices and contrivances by: (1) employing a scheme to defraud; (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the

3

circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and prospective purchasers of securities (the "victim-investors"), by causing materially false and fraudulent statements and material omissions to be made to the victim-investors about defendant MCDONALD's use of victim-investors' investments and Hercules's financial health.

3. The scheme to defraud operated, in substance, as follows:

a. Defendant MCDONALD solicited investments from the victim-investors by offering to sell, as part of a purported "capital raise," equity in Hercules in the form of "units," which units constituted "securities" within the meaning of the Securities Exchange Act of 1934.

b. Defendant MCDONALD pitched investment opportunities to the victim-investors, including by means of interstate wire communications through use of Zoom's video teleconference platform.

c. To induce the victim-investors to invest in Hercules by purchasing units, defendant MCDONALD concealed from victim-investors the following material facts:

i. That, because of a risky bet that defendant MCDONALD made using Hercules's clients' funds, Hercules's clients had recently lost between $30 million and $40 million; and

ii. That defendant MCDONALD had agreed on behalf of Hercules to repay Hercules's clients, including, if necessary, with funds obtained by selling equity in Hercules to the victim-investors.

d. In soliciting funds from the victim-investors, defendant MCDONALD falsely represented that the sale of equity in

Hercules was intended to finance the expansion of Hercules's infrastructure and staff.  In truth, as defendant MCDONALD then knew, defendant MCDONALD intended to use the victim-investors' funds to repay Hercules's clients and fund his own lifestyle.

   e. During investment pitches, defendant MCDONALD conveyed a false sense of urgency to the victim-investors by suggesting that, if victim-investors waited, they would lose the opportunity to invest because further equity in Hercules would no longer be available for sale.

   f. In soliciting investments from the victim-investors, defendant MCDONALD also misrepresented his educational background.

   g. Defendant MCDONALD caused victim-investors to make their purchases of units in Hercules by means of interstate wire transfers to the Hercules BoA Account.

   h. To lull victim-investors who confronted him about the use of their investments, and delay their bringing legal action against him, defendant MCDONALD falsely promised to repay their investments and issued purported promissory notes.

   i. To prevent exposure of his misuse of victim-investors' funds, defendant MCDONALD failed to appear, as required, to testify before the SEC, changed his residence, and concealed his location from government authorities.

C. EXECUTION OF THE FRAUDULENT SCHEME

  4. On or about March 9, 2021, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, and in furtherance of the manipulative and deceptive devices described above, defendant MCDONALD directly and indirectly caused the use of a means and instrumentality of

5

interstate commerce in connection with the purchase and sale of securities, namely, the interstate wire transfer of approximately $675,000 from a bank account belonging to victim-investor T.I. to the Hercules BoA Account in connection with the purchase of Hercules units.

COUNT TWO

[18 U.S.C. § 1343]

5. The Grand Jury realleges paragraphs 1, 3, and 4 of this Indictment here.

A. THE SCHEME TO DEFRAUD

6. Beginning no later than in or about January 2021, and continuing through on or about January 17, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant MCDONALD, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud victim-investors in Hercules as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

7. The scheme to defraud operated, in substance, as described in paragraph 3 of this Indictment.

B. USE OF INTERSTATE WIRES

8. On or about March 11, 2021, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant MCDONALD transmitted and caused the transmission of a wire communication in interstate commerce, namely, a Zoom video meeting with victim-investors R.F. and K.F.

## COUNTS THREE THROUGH FIVE
## [15 U.S.C. §§ 80b-6, 80b-17]

9. The Grand Jury realleges paragraph 1 of this Indictment here.

A. THE SCHEME TO DEFRAUD

10. Beginning no later than on or about May 1, 2019, and continuing through on or about January 17, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant MCDONALD, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the mails, (a) employed devices, schemes, and artifices to defraud ISA's clients and prospective clients; and (b) engaged in transactions, practices, and courses of business which operated as a fraud and deceit upon ISA's clients and prospective clients.

11. The scheme to defraud operated, in substance, as follows:

   a. Defendant MCDONALD solicited prospective clients to provide funds for ISA to manage on their behalf through further investment of those funds.

   b. In soliciting prospective clients, defendant MCDONALD falsely represented that ISA was a registered investment adviser even after defendant MCDONALD had terminated ISA's status as a registered investment adviser in all jurisdictions, stated that ISA was "[n]o longer in business or closing business," and represented that neither he, nor any related person, had custody of ISA's client assets.

   c. Defendant MCDONALD falsely represented to ISA's clients that he would use their funds to trade securities. In fact,

       i. Defendant MCDONALD used less than half of the money he raised from ISA's clients for the purpose of trading

8

securities and sometimes conducted no trading activity at all with ISA's client funds for months at a time; and

    ii. Defendant MCDONALD misappropriated ISA's client funds by using them to pay his personal expenses, pay Hercules's clients and/or creditors, and pay Ponzi-like returns to investors to create the false impression that ISA was a successful firm.

  d. Defendant MCDONALD falsely represented to ISA's clients that their funds would be held in individual accounts. Instead, defendant MCDONALD commingled ISA's client funds with Hercules's client funds and personal funds.

  e. To conceal his misappropriation of ISA's client funds and continue his fraudulent scheme, defendant MCDONALD sent ISA's clients false account statements each month that purported to show positive returns from trading and cash held at the end of the month.

  f. To prevent exposure of his misuse of ISA's clients' funds, defendant MCDONALD failed to appear, as required, to testify before the SEC, changed his residence, and concealed his location from government authorities.

B. <u>EXECUTIONS OF THE FRAUDULENT SCHEME</u>

  12. On or about the following dates, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant MCDONALD directly and indirectly caused the use of a means and instrumentality of interstate commerce in connection with the purchase and sale of

//
//

securities, namely, the transmission of the following items by means of interstate wire communication:

| COUNT | DATE | EXECUTION |
|-------|------|-----------|
| THREE | 05/29/2020 | Interstate wire transfer of $150,000 from ISA client J.M. to the ISA BoA Account |
| FOUR | 12/29/2020 | Interstate wire transfer of $100,000 from ISA client C.M. to the ISA BoA Account |
| FIVE | 01/05/2021 | Interstate wire transfer of $3,000 from the ISA BoA Account to the bank account of ISA client B.C. |

## COUNTS SIX AND SEVEN

## [18 U.S.C. § 1957]

13. The Grand Jury realleges paragraphs 1 and 3 through 5 of this Indictment here.

14. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant MCDONALD, knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, securities fraud, in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, as charged in Count One of this Indictment:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| SIX | 03/10/2021 | Wire transfer of approximately $174,610 from the Hercules BoA Account to Kienle Motor Sports LLC, dba Porsche Ontario |
| SEVEN | 03/10/2021 | Wire transfer of approximately $109,512 to C.H. on behalf of landlord Y.C. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

15. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant JAMES ARTHUR MCDONALD, JR.'s conviction of any of the offenses set forth in Counts One through Five of this Indictment.

16. Defendant MCDONALD, if so convicted, shall forfeit to the United States of America the following:

   a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

   b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

17. Pursuant to Title 18, United States Code, Section 981(a)(1)(c), as incorporated by Title 28, United States Code, Section 2461(c), if so convicted, defendant MCDONALD shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant MCDONALD, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in

value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

18. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of defendant JAMES ARTHUR MCDONALD, JR.'s conviction of either of the offenses set forth in Counts Six and Seven of this Indictment.

19. Defendant MCDONALD, if so convicted, shall forfeit to the United States of America the following:

   a. Any property, real or personal, involved in such offense, and any property traceable to such property; and

   b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

20. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), defendant MCDONALD, if so convicted, shall forfeit substitute property, if, by any act or omission of defendant MCDONALD, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an

14

intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

    /S/
Foreperson

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

CAROLYN S. SMALL
ALEXANDER B. SCHWAB
Assistant United States Attorneys
Major Frauds Section