JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorneys
Corporate and Securities Fraud Strike Force
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1259/2429
    Facsimile: (213) 894-0141
    E-mail:    alexander.schwab@usdoj.gov
            nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>JAMES ARTHUR MCDONALD, JR.,<br><br>    Defendant. | No. CR 23-19-DSF<br><br>PLEA AGREEMENT FOR DEFENDANT<br>JAMES ARTHUR MCDONALD, JR. |

1. This constitutes the plea agreement between James Arthur McDonald, Jr. ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in this case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the

indictment in United States v. McDonald, CR No. 23-19-DSF, which charges defendant with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. 240.10b-5.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

h.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

2

usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to USSG § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

3

NATURE OF THE OFFENSE

4. Defendant understands that, for defendant to be guilty of the crime charged in count one of the indictment, that is, securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, the following must be true: (1) defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person; (2) defendant's act was undertaken, statement was made, or failure to disclose was done in connection with the purchase or sale of securities within the meaning of 15 U.S.C. § 78c(a)(10); (3) defendant directly or indirectly used an interstate wire communication in connection with this act, making this statement, or failing to disclose a material fact; and (4) defendant acted knowingly.

a. "Willfully" means intentionally undertaking an act, making an untrue statement, or failing to disclose for the wrongful purpose of defrauding or deceiving someone. Acting willfully does not require that the defendant know that the conduct was unlawful.

b. A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to purchase securities.

c. It is not necessary that an untrue statement passed through or over the wire communication so long as the wire communication was used as a part of the transaction.

d. It is not necessary that defendant made a profit or that anyone actually suffered a loss.

4

PENALTIES AND RESTITUTION

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 is: twenty years' imprisonment; a three-year period of supervised release; a fine of $5 million or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed or charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is between $2,745,892.64 and $3,025,892.64, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that

5

if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty

in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Defendant was the Chief Executive Officer ("CEO") and Chief Investment Officer ("CIO") of Hercules Investments LLC, a California limited liability company headquartered in Los Angeles.  From on or about September 5, 2019, to on or about December 31, 2021, Hercules was registered with the United States Securities and Exchange Commission ("SEC") as an investment adviser under the Investment Advisers Act of 1940, and defendant served as the investment adviser representative for Hercules.

Defendant was also the CEO and CIO of Index Strategy Advisors Inc. ("ISA"), a Texas corporation headquartered in Los Angeles.  From roughly November 22, 2010, to May 1, 2019, ISA was registered in at

least one state as an investment adviser under the Investment Advisers Act of 1940, and defendant served as the investment adviser representative for ISA.  On or about May 1, 2019, defendant filed on behalf of ISA a notice of withdrawal from registration as an investment adviser in Texas, at which point ISA was no longer a registered investment adviser in any jurisdiction.  In the withdrawal notice form, defendant represented, under penalty of perjury, that ISA had ceased conducting advisory business in the jurisdiction from which it was withdrawing as of August 1, 2018.  In the "Reasons for withdrawal" section of the form, defendant crossed out "[c]ontinuing advisory activities, but relying on an exemption from registration," and wrote, "No longer in business or closing business."  Defendant also represented on the form that neither he, nor any related person, had custody of client assets.

Beginning no later than in or about January 2021, and continuing through on or about December 13, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of Hercules securities, used and employed manipulative and deceptive devices and contrivances by: (1) employing a scheme to defraud; (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and prospective purchasers of securities, by causing materially false and fraudulent statements and

material omissions to be made about defendant's use of investors' funds and Hercules's financial health.

In particular, defendant solicited investments by offering to sell, as part of a purported "capital raise," equity in Hercules in the form of "units," which units constituted "securities" within the meaning of the Securities Exchange Act of 1934.  Defendant pitched investment opportunities to potential investors, including by means of interstate wire communications through use of Zoom's video teleconference platform.  Eventually, defendant convinced victims K.F. and R.F to purchase units in Hercules, and K.F. and R.F. pooled money with others through T.I., an investment vehicle.  Defendant concealed from T.I. and its constituent investors, however, that, because of a risky bet that he had made using Hercules's clients' funds, Hercules's clients had recently lost between $30 million and $40 million; and that defendant had agreed on behalf of Hercules to repay Hercules's clients, including, if necessary, with funds obtained by selling equity in Hercules.  Defendant also falsely represented to T.I. and its constituent investors that the sale of equity in Hercules was intended to finance the expansion of Hercules's infrastructure and staff.  In truth, defendant intended to use the funds to repay Hercules's clients and fund his own lifestyle. Defendant also conveyed, during his investment pitch to T.I., an exaggerated sense of urgency by suggesting that, if investors waited, they would lose the opportunity to invest because further equity in Hercules would no longer be available for sale.  Defendant also misrepresented his educational bona fides to members of T.I. and others, telling them that he held a bachelor's degree in economics from Harvard University.  In reality, defendant attended the Harvard

9

Extension School, which does not confer bachelors' degrees in economics.

Based on defendant's misrepresentations and concealment of material facts, T.I. agreed to invest $1 million in the purchase of Hercules units, with K.F. separately agreeing to invest an additional $1 million of his own money to purchase Hercules units.  On March 9, 2021, via interstate wire, T.I. wired$675,000 to a Hercules account in Los Angeles that was controlled by defendant.  After intermingling those funds with other money in the account, defendant spent a large portion of those funds on personal expenses, including using $174,610 on March 10, 2021, to pay off the balance on a Porsche he had purchased; paying $109,512 on March 10, 2021, to the landlord of the home defendant was renting in Arcadia, California; and paying $50,000 on March 11, 2021, to a Hercules client to repay that client's investment losses.  Defendant understood that his scheme was a violation of the securities laws and regulations.

After members of T.I. confronted defendant in a March 11, 2021, interstate Zoom meeting with the fact that he improperly spent the good-faith deposit and had failed to disclose Hercules's weak financial condition, defendant sent R.F. a promissory note promising to return T.I.'s $675,000 partial investment and claimed it was his "full intent and desire to return your capital immediately from an equity investment transaction expected to materialize within the next two business days."  Defendant ultimately repaid only approximately $106,455 of T.I.'s $675,000 investment.

Defendant also defrauded his ISA clients.  Even though ISA was no longer an investment adviser as of May 1, 2019, defendant continued to operate it afterwards as though it were an investment

adviser and provided prospective clients with a brochure and investment advisory contact falsely representing that ISA was a registered investment adviser.  Defendant also falsely represented to ISA clients that he would use their money to trade securities.  In reality, he used less than half of the approximately $3.6 million he raised from ISA clients for trading purposes and conducted no trading at all with ISA client money from October 2020 to May 2021.  Instead, defendant frequently commingled ISA client funds with funds from his personal bank account, which itself had been commingled with ISA funds and funds from Hercules clients.  Using approximately $1.4 million of the commingled funds, defendant made Ponzi-like payments to ISA clients -- that is, paying ISA clients using funds from other clients.  Defendant also used approximately $1 million of ISA money to purchase luxury cars and to pay rent on his home, personal credit card charges, and Hercules operating expenses.

To conceal his misappropriation of ISA client money and continue his fraudulent scheme, defendant sent ISA clients false account statements each month purportedly showing positive returns from trading and cash held at the end of the month.

Defendant's investment adviser fraud scheme included the following executions via interstate wire transfer:

- A May 29, 2020, transfer of $150,000 from ISA client J.M. to ISA's Bank of America account.  J.M. received false ISA statements showing he had over $600,000 in an ISA-directed Interactive Brokers account when, in fact, defendant had never opened an Interactive Brokers account for J.M.

- A December 29, 2020, transfer of $100,000 from ISA client C.M. to ISA's Bank of America account.  Rather than trading

11

with these funds, defendant spent the funds in various unauthorized ways, including paying off $7,215.44 in credit card debt and transferring, on January 5, 2021, $3,000 to ISA client B.C.

In total, as a result of his investment adviser fraud scheme and his securities fraud against investors in the Hercules capital raise, defendant caused actual losses between $2,745,892.64 and $3,025,892.64.

In October 2021, defendant received a subpoena from the U.S. Securities and Exchange commission to appear for testimony on November 16, 2021, but failed to appear before the SEC.  Defendant went into hiding until he was arrested on June 15, 2024, at a home in Port Orchard, Washington, where investigators found, among other things, a fake Washington, D.C., driver license bearing defendant's photograph and the name "Brian Thomas."

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level | 7 | USSG § 2B1.1(a)(1) |
| Intended Loss > $1.5 million | +16 | USSG § 2B1.1(b)(1)(I) |
| Victims ≥ 10 | +2 | USSG § 2B1.1(b)(2)(A) |
| Person Associated with Investment Adviser | +4 | USSG § 2B1.1(b)(20)(A)(iii) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.   The right to persist in a plea of not guilty.

    b.   The right to a speedy and public trial by jury.

    c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

//

//

13

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

16.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes and regulations pertaining to defendant's guilty plea are unconstitutional or otherwise unlawful, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.    Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 121

14

months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $4 million; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 63 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $2.9 million.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

19. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its

15

obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

20. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

21. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

22. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have

16

occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

17

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

24.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

                        NO ADDITIONAL AGREEMENTS

    27.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

    28.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

JOSEPH T. MCNALLY
Acting United States Attorney


_____          February 18, 2025
ALEXANDER B. SCHWAB / NISHA CHANDRAN        _____
Assistant United States Attorney           Date

_____          2/14/25
JAMES ARTHUR MCDONALD, JR.                  _____
Defendant                                  Date

_____          Feb. 16, 2025
CHARLES PETER DIAMOND                       _____
Attorney for Defendant                     Date
JAMES ARTHUR MCDONALD, JR.


                                19

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____       2/14/25
JAMES ARTHUR MCDONALD, JR.              Date
Defendant

20

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JAMES ARTHUR MCDONALD, JR.'s attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          Feb. 16, 2025
CHARLES PETER DIAMOND                     _____
Attorney for Defendant                    Date
JAMES ARTHUR MCDONALD, JR.

21